[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Aug. 20, 2008
THOMAS K. KAHN
CLERK

_____

No. 05-14631

_____

D. C. Docket No. 03-00083-CR-CDL-5

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EDDIE MILTON GAREY, JR.,
a.k.a. Miles Garey,
a.k.a. Milton Garey,
a.k.a. Eddie Garey,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

**(August 20, 2008)**

Before EDMONDSON, Chief Judge, and TJOFLAT, ANDERSON, BIRCH,
DUBINA, BLACK, CARNES, BARKETT, HULL, MARCUS, WILSON and
PRYOR, Circuit Judges.

BLACK, Circuit Judge:

It is well-established that a defendant wishing to waive his right to counsel may do so by invoking his right to self-representation and confirming his knowing choice through a cooperative dialogue with the court. *See Faretta v. California*, 422 U.S. 806, 835, 95 S. Ct. 2525, 2541 (1975). This case requires us to address the situation in which an uncooperative defendant adamantly and knowingly rejects the competent counsel to which he is constitutionally entitled, but also refuses to invoke affirmatively his right to self-representation.

Defendant-Appellant Eddie Milton Garey was indicted on 27 felony counts for his unsuccessful attempts to extort money by threatening to bomb various buildings in and around Macon, Georgia. In September 2003, he was appointed a lawyer, Scott Huggins, who represented him ably for 15 months. Three days before trial was slated to begin, Garey demanded a new lawyer, contending Huggins was unable to advocate zealously on his behalf. The trial judge disagreed, and offered Garey two options: accept Huggins' representation or try the case yourself. Not satisfied with either alternative, Garey refused to choose, repeatedly rejecting Huggins while adamantly refusing to waive his right to counsel.

After numerous attempts to elicit a clear choice from Garey failed, the court determined his conduct evinced a knowing and voluntary waiver of the right to counsel. The court demoted Garey's appointed lawyer to the position of standby counsel and allowed Garey to represent himself at trial, where he was convicted on all counts charged.

On appeal, Garey contends the trial court violated his Sixth Amendment right to counsel by forcing him to proceed pro se when he had not affirmatively asked to represent himself. In light of all the circumstances, we conclude Garey voluntarily waived his right to counsel by his conduct and, because he was forewarned of the consequences of his choice and the dangers it posed, we conclude the waiver was knowing. Therefore, we affirm.

## I. BACKGROUND

### A. Crimes and Arrest

For eleven days in early September 2003, the Macon-Bibb County 911 Center received a series of disturbing calls from the same unidentified caller. Using several different cellular telephones and a computer generated voice, the caller tried to extort money by threatening to bomb and gas various locations throughout the City of Macon, Georgia. On September 11, 2003, federal agents

traced one of the calls to a local residence and found themselves at the home of Eddie Milton Garey.

When agents entered to execute a search warrant, they discovered Garey on the phone with a 911 operator. Scattered throughout the house were four cellular phones bearing phone numbers linked to the threatening 911 calls. Installed on Garey's computer was a text-to-speech program called CrazyTalk which "spoke" in a computerized voice when words were entered on the keyboard. On the basis of this evidence, Garey was taken into custody and was later indicted on eleven counts of obstructing justice, five counts of threatening to use a weapon of mass destruction, five counts of making a threat affecting interstate commerce, five counts of manufacturing counterfeit securities, and one count of possessing ammunition as a convicted felon.

Almost immediately following Garey's arrest, the Government asked the court to order a competency evaluation. Following a ten-hour assessment that included personal interviews, standardized mental health examinations, and a review of Garey's personal writings and social history, Garey was diagnosed with paranoid personality disorder with antisocial and narcissistic features. The psychiatrists responsible for the competency evaluation also concluded Garey had

normal intelligence and understood the proceedings and charges against him.[1]

When the evaluation was completed, Garey stipulated to his competency to stand trial.

B. *Proceedings Regarding Waiver of Counsel*

The day after his arrest, Garey appeared in court represented by appointed counsel Scott Huggins. Throughout fifteen months of pretrial proceedings, Huggins continued to represent Garey largely without incident.[2] Then, on the afternoon of Friday, December 3, 2004—three days before trial was scheduled to begin—Garey filed a pro se "Motion to Disqualify Counsel and For Substitute Counsel Based Upon Ongoing Conflicts of Interest and Irreconcilable Differences with Court-Appointed Counsel." The following Monday, the court convened a hearing on the motion.

At the motion hearing, Garey argued Huggins had a conflict of interest because Huggins' law office was located in one of the buildings Garey had allegedly threatened to bomb. Finding no actual conflict of interest between

---

[1] According to the author of the competency evaluation, "Garey indicated he felt he might be capable of representing himself pro se, but noted he was entitled to an attorney and that he would be foolish to proceed without legal representation."

[2] The record reveals that Garey continued to write letters and file pro se motions with the district court on a regular basis throughout the time the case remained pending. Some of these filings contain complaints about counsel's tactical decisions; however, the December 3, 2004 filing appears to be the first in which Garey requested substitute counsel.

Garey and his lawyer, the trial court denied Garey's motion for substitution of counsel. The court then explained Garey's options as follows:

> You do not have the right to pick who your appointed attorney is, but you do have the right to proceed without an attorney . . . . [J]ust as you have the Constitutional right to have an attorney appointed for you, if you cannot afford one, you have the Constitutional right to represent yourself.

> If you choose to represent yourself, or before making that decision, I would caution you that you should make that decision very carefully. There are advantages to having a [sic] attorney trained in the law to represent you, to have someone who is expert on the rules of evidence and the other rules of law applicable to your case. I think it would generally be a disadvantage not to have that experience and expertise available to you. And there are many pitfalls for someone to proceed without an attorney, with regard to various aspects of the trial, including the questioning of witnesses, the decisions on who to put up as witnesses, the decisions on whether to testify or not, decisions regarding impeachment, cross-examination. All of those things, in the court's view, it's very important to have an attorney providing you with legal advice.

The trial judge then asked Garey whether he wished "to proceed with the representation of [him]self without an attorney."

Instead of responding to the question posed by the court, Garey renewed his conflict of interest argument. Again the trial judge explained why no conflict existed, and again the judge asked Garey to indicate whether he wished to proceed to trial with Huggins or wished to represent himself:

6

Court:      I am not appointing a new lawyer for you. The question is: Do you want to proceed with Mr. Huggins, or do you want to proceed with representing yourself?

Garey:      Okay. Like I said—

Court:      That's the only question.

Garey:      I'm going to say it again. I'm not voluntarily waiving my right to have counsel.

*  *  *  *

Court:      I need an answer. Do you wish to have Mr. Huggins represent you, or do you wish to represent yourself?

Garey:      Your Honor, if you'll be fair with me. I want to make one more statement and I'll answer your question affirmatively. Is that fair, Your Honor?

Court:      Yes, sir.

The court permitted Garey to catalogue his tactical disagreements with Huggins.

Garey then stated:

Garey:      Your Honor, I am not going to let Mr. Huggins represent me. And if the Court is giving me no other choice, I will have to go along with the choice of involuntarily waiving my right to counsel, involuntarily waive. But I'm not going to let Mr. Huggins represent me, because he's a victim of the crime I'm accused of. I don't feel comfortable. *Faretta* says the right goes to the accused. 413 U.S. at page 806, 819 through 20, says it's the accused who suffers the adversity if the defense failed.

*  *  *  *

7

Court:     Just to be fair to you, let me make sure the record is clear.  It's my understanding that the defendant wishes to have competent counsel appointed to represent him.

Garey:     Conflict-free counsel.

Court:     Conflict-free counsel to represent him.  He has concluded, in his mind, that Mr. Huggins is not conflict-free; and therefore, he does not wish to have Mr. Huggins represent him.  If the court does not appoint other counsel, and indicates to the defendant that the only counsel that he can be represented by, in an appointed capacity . . . is Mr. Huggins, then it's the Court's understanding that the defendant wishes [to] proceed with representation of himself without counsel.  Is everything I stated accurate?

Garey:     Involuntarily without counsel, yes.

Court:     In other words, if I say that I find that Mr. Huggins is competent and conflict-free, and he's the only appointed lawyer you are going to get, your choice would be to proceed with representing yourself without counsel.  Is that correct?

Garey:     I'll say it again, Your Honor.  I'm going to involuntarily represent myself because I do not feel comfortable with the victim of the crime that I'm accused of—

Court:     The Court interprets that to mean if the Court does not assign other counsel other than Mr. Huggins, that the defendant wishes to proceed to represent himself.  The Court . . . has advised the defendant of the Court's advice that he proceed with representation by Mr. Huggins.  The Court has also advised the defendant of the downside of not being represented by counsel.  Notwithstanding that

8

> advice, noticed by the Court, the Court finds that the defendant has voluntarily and knowingly decided to—

Garey: Involuntarily, Your Honor.

Court: You can put your spin on it. The Court finds that the defendant has knowingly and voluntarily decided to proceed with representation of himself. The Court is going to request that Mr. Huggins remain as stand-by counsel in case that becomes appropriate or necessary.

Shortly thereafter, the venire panel was convened, and the jury was chosen before the court recessed for the day.

The following morning, before the trial commenced, the judge counseled Garey further on the dangers of self-representation and provided him with another opportunity to accept Huggins' representation. The judge opened by commenting:

> Mr. Garey, I have already made the decision and found you competent to represent yourself and that your decision to proceed with your own representation was made freely and voluntarily, after hearing from you yesterday. However, I think the Court should make a few additional observations for the record, and also for your benefit, with regard to your self-representation and the pitfalls that potentially lie ahead.
>
> First of all, it's the Court's observation that, based upon the handling of this case to date, that you have been intimately involved in the defense of this case. You are fully aware of the charges. You are fully aware of the facts. You are competent and understand the consequences of your actions. And you appear to the Court to be intelligent, and to be acting freely and voluntarily, particularly as that relates to your decision to represent yourself. However, the Court

9

once again strongly encourages you to reconsider your decision to proceed without Mr. Huggins as your attorney.

This trial will be complex. There are many legal issues where you would benefit from the advice of a trained attorney.

Turning to the penalties Garey faced upon conviction, the district court asked the Government to confirm the anticipated Sentencing Guidelines range for Garey's offense, emphasizing, "I just think it's important for Mr. Garey to understand—he may already know. But I think it's important on the record for him to be advised of the potential sentence in this case as he decides whether to stand on his decision to proceed without legal counsel."

After the anticipated sentence was confirmed, the court continued:

Mr. Garey, I just want to make sure that you understand that with regard to the notice of estimated sentencing guideline range that was filed on March 29th of 2004, with which you were provided notice of [sic], the preliminary estimated guideline range was 87 months to 108 months; but it was clearly indicated that that is preliminary. In other words, there are certain factors that could result in an increase of that amount, such as your prior criminal history, if you have one; other aggravating circumstances. And therefore, the Court wants to make sure you understand that that 87 to 108 months is not binding.

But with that preliminary estimate in mind, I just want to make sure you understand the seriousness of these charges and that if you are convicted, you would face some substantial time in federal prison. Therefore, as you make your decision to represent yourself, I want you to understand all of the consequences.

The judge went on to explain to Garey further "pitfalls involved in representing [himself.]"

> In addition to you not having the legal training that a lawyer would have, my concern is there are pitfalls in any litigation for the unwary; and it is preferable, in my view, to have an attorney who understands those pitfalls.
>
> For example, there are pitfalls with regard to your potentially waiving your right under the Fifth Amendment: your right against self-incrimination. You have the right, under the Fifth Amendment, not to testify and not to put up any evidence, and the fact that you don't testify and don't put up any evidence cannot be used against you.
>
> *   *   *   *
>
> However, the Court is concerned that, as an untrained layman, you could do something during the trial that could waive your right under the Fifth Amendment. That is a right that is waivable. If you decide to take the stand and testify, then you would waive, to some or a complete extent, your rights under the Fifth Amendment against self-incrimination.
>
> There is a potential pitfall with regard to you giving an opening statement. You are allowed to give an opening statement and tell the jury what you think the evidence will show or will not show, but if you attempt to testify during an opening statement and tell them personally that you are innocent and why you are innocent.
>
> *   *   *   *
>
> But these are potential pitfalls that I don't want you to fall into. You have that right to give that opening statement, but I want to make sure you don't cross the line and do something that may give up your right under the Fifth Amendment against self-incrimination.

11

> Of course, if your plan is to testify, then you can tell the jury that in your opening statement; but you need to understand that by testifying, you waive certain rights under the Fifth Amendment.
>
> \* \* \* \*
>
> [I]f you take the witness stand, then you are subject to cross-examination by the government. There is the potential—if you have a previous felony conviction, there's the potential that that could come into evidence during their cross-examination of you for impeachment purposes; whereas if you did not take the stand, that conviction would not be admissible. Just an example of a potential pitfall of proceeding with representing yourself and not having an attorney there to represent you and advise you.

The court also clarified that Garey did not have to represent himself in order to preserve for appeal his contention that Huggins was operating under a conflict of interest, stating, "I want to make sure you don't think that to assert your ineffectiveness claim, you have to represent yourself. You do not."

After giving these admonitions, the judge asked Garey "whether it [wa]s still [his] decision to proceed with representing [him]self." Garey responded:

> Your Honor, I'm not voluntarily waiving my Sixth Amendment rights, but I'm not going to allow Mr. Huggins to continue as representation. I mean, if you let him stay on as stand-by counsel for insurance, I'm not going to argue with the Court on that. I'm not going to argue with that, because I'm not voluntarily waiving my right.

12

Just before the jury was brought into the courtroom, the judge asked Garey whether he wished to give his own opening statement, or have Huggins make it for him. Garey answered:

> I'm going to manage my own destiny at that point, Your Honor, because I have no other alternative except to proceed either with an attorney who I believe is a conflict or to represent myself. The Court is only giving me two options, so I have to choose the lesser option, which is to go without counsel, because I don't want to go with a counsel that we're not agreeing eye to eye on. I'm strong about my issues.

Garey represented himself throughout trial, with Huggins remaining as standby counsel. On the morning of the second day of trial, the trial judge once again offered his opinion that Huggins had "done a good job" handling Garey's case, and Huggins reported he stood "ready, willing, and able to assist" Garey in an active capacity. Garey did not accept Huggins' offer, however, and continued to represent himself for the remainder of trial. When trial concluded, the jury found Garey guilty of all counts charged, and he was sentenced to 360 months' imprisonment.

Garey appealed, contending the trial judge violated his Sixth Amendment right to counsel by requiring him to represent himself when he had not explicitly asked to do so. A divided panel of this Court agreed and reversed Garey's

13

conviction. *See United States v. Garey*, 483 F.3d 1159 (11th Cir. 2007). We granted en banc review on the question whether Garey knowingly and voluntarily waived his right to counsel.

## II.  DISCUSSION

*A.  The Sixth Amendment and Supreme Court Precedent*

Under the Sixth Amendment of the United States Constitution, all criminal defendants are entitled to the assistance of counsel. U.S. Const. amend. VI; *Foster v. Illinois*, 332 U.S. 134, 136-37, 67 S. Ct. 1716, 1718 (1947); *Johnson v. Zerbst*, 304 U.S. 458, 463, 58 S. Ct. 1019, 1022-23 (1938). This fundamental Constitutional right attaches at the time adversarial criminal proceedings are initiated, *see Rothgery v. Gillespie County*, No. 07-440, slip op. at 3 (U.S. June 23, 2008), and continues through completion of a first, non-frivolous direct appeal, *see Smith v. Robbins*, 528 U.S. 259, 278, 120 S. Ct. 746, 760 (2000). The right to counsel is a fundamental part of the adversary system of criminal justice and recognizes "the obvious truth that the average defendant does not have the professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty . . . ." *Johnson*, 304 U.S. at 462-63, 58 S. Ct. at 1022.

14

Nevertheless, the right to counsel is intended as a tool, not a tether. "[I]t is one thing to hold that every defendant . . . has the right to the assistance of counsel, and quite another to say that a State may compel a defendant to accept a lawyer he does not want." *Faretta*, 422 U.S. at 833, 95 S. Ct. at 2540. For that reason, it has long been established that a criminal defendant may waive the right to counsel when he does so intentionally and knowingly. *See, e.g.*, *Johnson*, 304 U.S. at 464, 58 S. Ct. at 1023.

Less clear are the means by which a defendant may waive his right to counsel. In *Faretta*, the Supreme Court recognized the right to self-representation in the context of deciding whether a defendant who had asked to represent himself and had demonstrated a rudimentary knowledge of legal procedure was entitled to proceed pro se. In determining he was, the Court noted, "The language and spirit of the Sixth Amendment contemplate that counsel, like the other defense tools guaranteed by the [Sixth] Amendment, [wi]ll be an aid to a willing defendant—not an organ of the State interposed between an unwilling defendant and his right to defend himself personally." *Faretta*, 422 U.S. at 820, 95 S. Ct. at 2533. *Farettta*'s recognition of the right to self-representation was grounded in respect for a defendant's free choice. "The right to defend is personal," for it is "[t]he

defendant, and not his lawyer or the State, [who] will bear the personal consequences of a conviction." *Id.* at 834, 95 S. Ct. at 2540-41.

It is important to remember that *Faretta*'s discussion of the right to self-representation presupposed a cooperative defendant willing to engage in reciprocal dialogue with the court. The Supreme Court has never confronted a case in which an uncooperative defendant has refused to accept appointed counsel or engage in a colloquy with the court. Consequently, the Court has never been asked to determine whether a defendant may waive counsel without making an explicit, unqualified request to represent himself.

## B. Waiver of Counsel by the Uncooperative Defendant

Although the Sixth Amendment guarantees counsel, it does not grant defendants the unqualified right to counsel of their choice. An indigent criminal defendant "does not have a right to have a particular lawyer represent him, nor to demand a different appointed lawyer except for good cause." *Thomas v. Wainwright*, 767 F.2d 738, 742 (11th Cir. 1985). Good cause in this context means a fundamental problem, "such as a conflict of interest, a complete breakdown in communication or an irreconcilable conflict which leads to an apparently unjust verdict." *United States v. Young*, 482 F.2d 993, 995 (5th Cir.

16

1973).[3] In practical terms, then, defendants who lack the means to hire a private attorney must either accept the counsel appointed to represent them or represent themselves.

Nevertheless, it is not uncommon for defendants to demand what they cannot have: substitute counsel. When confronted with defendants who, by their words and conduct, reject both appointed counsel and self-representation, several of our fellow circuits have concluded that a litigant may waive his right to court-appointed counsel not only by expressly invoking the right to self-representation, but also by engaging in conduct that evinces a knowing desire to reject the counsel to which he is entitled. *See King v. Bobby*, 433 F.3d 483, 492 (6th Cir. 2006); *United States v. Massey*, 419 F.3d 1008, 1010 (9th Cir. 2005); *United States v. Oreye*, 263 F.3d 669, 670-71 (7th Cir. 2001); *McKee v. Harris*, 649 F.2d 927, 931 (2d Cir. 1981). *But see Fischetti v. Johnson*, 384 F.3d 140, 146 (3d Cir. 2004) (suggesting only dilatory behavior or other misconduct might justify waiver by conduct). These courts hold that a defendant who rejects appointed counsel but refuses to cooperate with the court by affirmatively expressing his desire to proceed pro se, effectively chooses self-representation by

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981.

rejecting the only other choice to which he is constitutionally entitled. The

reasoning behind this approach is simple:

> The question of waiver is one of inference from the facts. As a matter both of logic and of common sense . . . if a person is offered a choice between three things and says "no" to the first and the second, he's chosen the third even if he stands mute when asked whether the third is indeed his choice.

*Oreye*, 263 F.3d at 670-71.

In the past, we have treated the express, affirmative request for self-

representation discussed in *Faretta* as the exclusive means by which a defendant

may waive the right to counsel.[4] Recognizing any waiver of counsel will result in

self-representation and anxious to prevent unintentional waiver of the protections

afforded by the right to counsel, we have suggested anything less than a "clear and

unequivocal" written or oral invocation of the right to self-representation is

insufficient to invoke the right to self-representation, regardless of context. *See,*

---

[4] Our requirement of affirmative waiver appears to have grown out of an understanding that "[t]he right to counsel . . . is preeminent over the right to self-representation because the former attaches automatically and must be waived affirmatively to be lost, while the latter does 'not attach unless and until it [i]s asserted.'" *Stano v. Dugger*, 921 F.2d 1125, 1143 (11th Cir. 1991) (en banc) (quoting *Dorman v. Wainwright*, 798 F.2d 1358, 1366 (11th Cir. 1986)). Although it is true that the right to counsel attaches automatically, the Supreme Court has never declared the right to counsel "preeminent" over the right to self-representation. To the contrary, *Faretta* clearly stated "there is no evidence that the colonists and the Framers ever doubted the right of self-representation, or imagined that this right might be considered inferior to the right of assistance of counsel." 422 U.S. at 832, 95 S. Ct. at 2539. We understand neither right to be inferior to the other.

*e.g.*, *Marshall v. Dugger*, 925 F.2d 374, 377 (11th Cir. 1991) ("It is necessary

. . . that the defendant clearly and affirmatively express a desire to represent

himself in the proceedings."); *Stano*, 921 F.2d at 1143 ("[T]he right to

self-representation must be manifested to the trial court by an oral or written

request in order to be recognized and to trigger the requisite examination by the

court.").

A prime example is our decision in *Marshall*. In that case, a criminal

defendant asked to fire his lawyer on the eve of trial, contending his counsel,

Thomas Osteen, was ineffective. *Marshall*, 925 F.2d at 375. Finding no good

cause to discharge counsel,

> the [trial] court explained to Marshall that he had three choices:
> (1) Mr. Osteen could continue to represent him; (2) he could proceed
> pro se; or (3) he could represent himself with the aid of Mr. Osteen as
> standby counsel.
>
> * * * *
>
> Rather than choose any of the options offered, Marshall simply
> insisted that he did not feel that Osteen was qualified to represent
> him. At no point in the colloquy did Marshall ever state that he
> wished to represent himself. He simply repeated his opinion that
> Osteen was unqualified.

*Id.* at 376. Interpreting Marshall's rejection of his lawyer as a decision to proceed

pro se, the district court discharged counsel. At trial, Marshall represented himself

19

and was convicted. On appeal, a panel of this Court reversed, concluding "Marshall's actions were insufficient to invoke the [S]ixth [A]mendment right of self-representation" because Marshall had made no written or oral request to represent himself. *Id.* at 377.

*Marshall* demonstrates the problem with recognizing affirmative waiver as the only valid means of waiver: it forces judges to ignore words, actions, and circumstances relevant to the Sixth Amendment inquiry. Marshall did not ask to proceed pro se. But he also did not remain neutral on the question of representation. To the contrary, Marshall made repeated, unequivocal statements rejecting his lawyer even though he knew the court would not appoint another lawyer to represent him. Insofar as *Marshall* failed to recognize waiver may occur outside the context discussed in *Faretta*, we conclude it was wrongly decided.

Today we recognize it is possible for a valid waiver of counsel to occur not only when a cooperative defendant affirmatively invokes his right to self-representation, but also when an uncooperative defendant rejects the only counsel to which he is constitutionally entitled, understanding his only alternative is self-representation with its many attendant dangers.[5] Without diminishing in any way

---

[5] This case does not present, and therefore we do not address, the situation in which a defendant forfeits his right to counsel by engaging in conduct that is highly disruptive or abusive. *See, e.g.*, *United States v. McLeod*, 53 F.3d 322, 325 (11th Cir. 1995).

20

our concern that district courts protect defendants from unwittingly waiving fundamental Constitutional rights, we conclude our prior precedents fail to recognize a defendant may intentionally and voluntarily waive his right to counsel and accept the consequent necessity of self-representation in more than one way. As the Second Circuit has aptly noted:

> [T]he very essence of a voluntary waiver is that it be the product of a free and meaningful choice. This does not mean, however, that a court may not, under certain circumstances, require the defendant to select from a limited set of options a course of conduct regarding his representation. A criminal defendant may be asked, in the interest of orderly procedures, to choose between waiver and another course of action as long as the choice presented to him is not constitutionally offensive.

*McKee*, 649 F.2d at 931 (citations and quotations omitted).

When a defendant rejects his court-appointed counsel or otherwise engages in behavior that creates tension between his right to counsel and his right to self-representation, a district court does not compromise the defendant's free choice by presenting him with accurate information regarding his lawful choices and asking him to choose between them. And, when an indigent defendant rejects competent, conflict-free counsel, he may waive his right to counsel by his uncooperative

21

conduct, so long as his decision is made with knowledge of his options and the consequences of his choice.[6]

In recognizing that a defendant may waive counsel by his uncooperative conduct as well as by his express request, we do not suggest that district courts are bound to interpret the uncooperative behavior of *every* defendant as a waiver of the right to counsel. Nor do we suggest a district court would err by requiring any particular defendant to make a clear statement of his intention to proceed pro se before agreeing to dismiss appointed counsel. In any given case, the proper course of action will turn on factors the district court is best positioned to assess. What we recognize today is that, in some instances, a defendant's conduct will reveal a voluntary decision to choose the path of self-representation over the continued assistance of counsel. In such cases, the district court may, in its discretion, conclude the defendant has voluntarily waived his right to counsel.

---

[6] Of course, if a defendant establishes counsel is incompetent or suffers from an actual conflict of interest, the defendant is entitled to the appointment of substitute counsel. *Bonin v. California*, 494 U.S. 1039, 1044, 110 S. Ct. 1506, 1509 (1990) ("The right to counsel's undivided loyalty is a critical component of the right to assistance of counsel; when counsel is burdened by a conflict of interest, he deprives his client of his Sixth Amendment right as surely as if he failed to appear at trial."); *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 2063 (1984) ("[T]he right to counsel is the right to the effective assistance of counsel.") (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14, 90 S. Ct. 1441, 1449 n.14 (1970)).

In order for a defendant to validly waive his right to counsel, his choice must be knowing, as well as voluntary. "Waiver of the right to counsel, as of constitutional rights in the criminal process generally, must be a 'knowing, intelligent ac[t] done with sufficient awareness of the relevant circumstances.'" *Iowa v. Tovar*, 541 U.S. 77, 81, 124 S. Ct. 1379, 1383 (2004) (quoting *Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 1469 (1970)). Whether a defendant has waived his rights knowingly depends "upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Johnson*, 304 U.S. at 464, 58 S. Ct. at 1023. Put another way:

> To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.

*Von Moltke v. Gillies*, 332 U.S. 708, 724, 68 S. Ct. 316, 323 (1948).

This Court has held the "ideal method of assuring that a defendant understands the consequences of a waiver is for the trial court to conduct a pretrial hearing" at which the "district court should inform the defendant of the nature of the charges against him, possible punishments, basic trial procedure and the hazards of representing himself." *United States v. Kimball*, 291 F.3d 726, 730

23

(11th Cir. 2002) (quotations omitted). We have emphasized the trial judge's duty to engage the defendant in a colloquy to elicit information regarding the defendant's background, understanding of the charges against him, and knowledge of courtroom rules and procedures, and we have warned that "[t]he closer to trial an accused's waiver of the right to counsel is, 'the more rigorous, searching and formal the questioning of the trial judge should be.'"[7] *United States v. Cash*, 47 F.3d 1083, 1088 (11th Cir. 1995) (quoting *Strozier v. Newsome*, 926 F.2d 1100, 1105 (11th Cir. 1991)); *see also Stano*, 921 F.2d at 1148.

We continue to stress that when a right as fundamental as the right to counsel is at stake, it is important for trial courts to do all in their power to ensure every defendant, from the most cooperative to the most obstreperous, is informed of the risks of proceeding pro se and is prevented from waiving counsel without sufficient knowledge of the protections he is surrendering. Before a court concludes a defendant has knowingly waived his right to counsel, the defendant

---

[7] This position is consistent with dicta in numerous Supreme Court cases suggesting "a more searching or formal inquiry" is required when a defendant wishes to waive his right to counsel at trial because "the full dangers and disadvantages of self-representation" are more substantial and less obvious at trial than during earlier stages of criminal proceedings. *Patterson v. Illinois*, 487 U.S. 285, 298-300, 108 S. Ct. 2389, 2398 (1988) ("[R]ecognizing the enormous importance and role that an attorney plays at a criminal trial, we have imposed the most rigorous restrictions on the information that must be conveyed to a defendant, and the procedures that must be observed, before permitting him to waive his right to counsel at trial."); *see also Tovar*, 541 U.S. at 89, 124 S. Ct. at 1388 ("Warnings of the pitfalls of proceeding to trial without counsel . . . must be rigorously conveyed.").

"should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Faretta*, 422 U.S. at 835, 95 S. Ct. at 2541 (quotations omitted). To that end, the best practice is for district courts to begin by attempting to engage the defendant in a full discussion of the dangers of self-representation whenever a defendant expresses a desire to waive his right to counsel, whether affirmatively or by his conduct.[8]

Nevertheless, an unwilling defendant can foil a district court's best efforts to engage in dialogue, thereby preventing the court from eliciting clear information regarding the defendant's understanding of the dangers of proceeding pro se. A dialogue cannot be forced; therefore, when confronted with a defendant who has voluntarily waived counsel by his conduct and who refuses to provide clear answers to questions regarding his Sixth Amendment rights, it is enough for the court to inform the defendant unambiguously of the penalties he faces if convicted and to provide him with a general sense of the challenges he is likely to

---

[8] The *Bench Book for United States District Judges* 1.02(c) (4th ed. 1996) provides a list of model questions for judges to ask litigants who express a desire to proceed pro se. These questions focus on the defendant's familiarity with the law, including his knowledge of the criminal justice system, court system, Sentencing Guidelines, Rules of Evidence, and Rules of Criminal Procedure. In addition, the Bench Book recommends judges counsel defendants against self-representation when they are unfamiliar with the law, court procedures, and rules of evidence, and advises them to appoint standby counsel to assist all unrepresented defendants.

confront as a pro se litigant. So long as the trial court is assured the defendant (1) understands the choices before him, (2) knows the potential dangers of proceeding pro se, and (3) has rejected the lawyer to whom he is constitutionally entitled, the court may, in the exercise of its discretion, discharge counsel or (preferably, as occurred here) provide for counsel to remain in a standby capacity.[9] In such cases, a *Faretta*-like monologue will suffice.

## C. *Garey's Waiver*

We now turn to whether Garey's waiver of counsel was both knowing and voluntary, a mixed question of law and fact which this Court reviews *de novo*. *Cash*, 47 F.3d at 1088. This case comes to us on direct appeal; therefore, the Government bears the burden of proving the waiver was valid. *Greene v. United States*, 880 F.2d 1299, 1303 n.6 (11th Cir. 1989) (citing *Brewer v. Williams*, 430 U.S. 387, 404, 97 S. Ct. 1232, 1242 (1977)).

---

[9] Once again, we emphasize a court is not *required* to relieve a criminal defendant of counsel when the defendant engages in obstructionist conduct. If, when viewing all relevant circumstances, a court concludes a defendant's equivocal, irrational, or otherwise uncooperative conduct stems from serious mental illness, confusion, or any other condition indicative of a lack of understanding, the court should prohibit the defendant from proceeding pro se, even if the defendant has rejected counsel or made an affirmative request to proceed without counsel. *Cf. Indiana v. Edwards*, No. 07-208, slip op. at 10 (U.S. June 19, 2008) (Constitution permits judges to take realistic account of defendant's mental capacities by asking whether defendant who seeks to conduct his own defense at trial is mentally competent to do so). Our decision today is meant to provide trial courts with guidance and discretion—not to force courts to discharge counsel against their better judgment.

In light of the new rule recognized today, the first question we must answer is whether Garey waived his right to counsel voluntarily, either by affirmatively invoking his right to self-representation or by his conduct in rejecting all other available options.

The Government contends Garey made an "affirmative request" to represent himself when he told the district court he would "manage [his] own destiny" and "choose the lesser option, which is to go without counsel." We see several obstacles to classifying these statements as the sort of "clear, unequivocal" requests we have previously equated with affirmative waiver. First, the statements were not made until the morning of December 7, 2004, *after* the court had demoted Huggins to the position of standby counsel and after important final pretrial proceedings (such as jury selection) had already taken place. Second, in order to read Garey's statements as an unequivocal request to proceed pro se, we would need to read them in isolation. In context, what Garey said was this:

> I'm going to manage my own destiny at that point, Your Honor, *because I have no other alternative except to proceed either with an attorney who I believe is a conflict or to represent myself.* The Court is only giving me two options, so I have to choose the lesser option, which is to go without counsel, because I don't want to go with a counsel that we're not agreeing eye to eye on.

Garey's choice may have been clear, but it was not unequivocal.

Given these facts, it is easy to see why the trial court was hesitant to compel Garey to accept Huggins' representation when it was clear Garey did not want Huggins' assistance, did not trust Huggins' allegiance, and disagreed with the manner in which Huggins was representing him. Once the trial court denied Garey's motion for substitution of counsel, it found itself in a difficult position: Garey had no right to counsel other than Huggins, but he had already made clear he did not want Huggins to represent him. Recognizing Garey's words and actions implicated his right to self-representation as well as his right to counsel, the court set before Garey two constitutionally permissible choices and asked him to choose between them.

On December 6, the judge cautioned Garey to make the decision to proceed pro se "very carefully," advising him, "I think it would generally be a disadvantage not to have [a lawyer's] experience and expertise available to you." After hearing multiple warnings and being questioned repeatedly (largely to no avail), Garey insisted: "Your Honor, I am not going to let Mr. Huggins represent me. And if the Court is giving me no other choice, I will have to go along with the choice of involuntarily waiving my right to counsel, involuntarily waive."

Before trial commenced the next morning, the judge tried again to dissuade Garey from proceeding pro se. The judge carefully reviewed with Garey the

anticipated guideline sentence and warned him that his actual sentence could be higher based on past convictions or other aggravating factors. The judge warned Garey of the danger of unintentionally waiving his right against self-incrimination during opening statement and cautioned him that he could be impeached with evidence of past convictions should he choose to testify. Repeatedly, the court expressed its belief that an attorney would be able to offer Garey advice and assistance. Garey was not deterred, however, explaining he would "manage [his] own destiny" because he did not want a lawyer with whom he did not see "eye to eye."

On appeal, Garey contends it was error for the trial court to put him to the choice of waiving counsel or proceeding pro se when he had asked only for substitution of counsel. As we explained above, the problem with Garey's position is that it ignores the logical consequences of the denial of his substitution motion. Garey was presented with two constitutional options: accept representation by a competent, unconflicted lawyer or represent yourself. No less than four times, Garey rejected Huggins' representation outright, and several times more he expressed his intent to represent himself (albeit "involuntarily"). By rejecting appointed counsel, Garey voluntarily chose to proceed pro se as surely as

if he had made an affirmative request to do so. Therefore, we conclude Garey voluntarily waived his right to counsel by his conduct.

The next question then is whether Garey's waiver was knowing. Before allowing Garey to proceed pro se, the trial court did not engage in a reciprocal *Faretta* dialogue; however, he clearly advised Garey of the dangers of proceeding pro se on two occasions—first, at the December 6, 2004 hearing on Garey's motion for substitution of counsel, and second, on the morning of December 7, after the jury had been selected but before the trial began. On those occasions, Garey provided circular answers to the court's most basic questions regarding his desire to proceed pro se. Given that fact, there is little reason to believe Garey would have been forthcoming had the court asked further questions regarding his knowledge of the law.

What the trial court did do was explain to Garey, clearly and repeatedly, what his constitutional choices were and what dangers lay along the path of self-representation. Garey was told there were many advantages to being represented by an attorney trained in the law and familiar with the rules of evidence and other rules applicable to his case. The trial court warned of "pitfalls" associated with interrogating, impeaching, and cross-examining witnesses and discussed with Garey the calculus involved in deciding whether to testify at trial. In addition, the

30

court explained some of the challenges Garey would face in making his opening statement.

By Garey's responses and non-responses and half-responses to the trial court's warnings and questions, it is clear he understood his choices. It is also clear Garey understood the advantages counsel could offer and indicated his desire to be represented by someone other than Huggins. Most importantly, it is clear Garey weighed his constitutional options and made the reasoned (even if imprudent) decision he would rather forego counsel than go to trial with Huggins, whose approach to the case Garey distrusted. Given these facts, we conclude Garey knowingly waived his right to counsel.

## III. CONCLUSION

Under difficult circumstances, the district court demonstrated respect for Garey's Sixth Amendment rights, presenting him with information regarding his constitutional options, warning him of the dangers of proceeding without counsel, and providing him with capable standby counsel when he refused to be represented by appointed counsel. We are satisfied Garey waived his right to

counsel by his uncooperative conduct, and that he did so with an understanding of the dangers of self-representation.  His waiver was knowing and voluntary; therefore, the trial court did not err by allowing Garey to represent himself at trial.

**AFFIRMED.**

BARKETT, Circuit Judge, CONCURRING:

The record reflects that Eddie Milton Garey, Jr. objected to representation by appointed counsel; that the trial judge advised Garey that he was entitled to effective representation but not to the counsel of his choice; that the trial judge extensively warned Garey on the record of the dangers of self-representation; that Garey, although disdainful of his options, voluntarily expressed a preference for self-representation over appointed counsel; and that the trial judge required Garey's appointed counsel to remain as standby counsel to assist during trial. Thus, I concur in the majority's judgment in this case.