**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 08-4871

UNITED STATES OF AMERICA,

                    Plaintiff - Appellee,

          v.

JAMES EUGENE VENABLE, a/k/a James E. Venable,

                    Defendant - Appellant.

Appeal from the United States District Court for the Eastern
District of Virginia, at Richmond.  Richard L. Williams, Senior
District Judge.  (3:08-cr-00199-RLW-1)

Submitted:  February 23, 2010        Decided:  April 14, 2010

Before KING and GREGORY, Circuit Judges, and Joseph R. GOODWIN,
Chief United States District Judge for the Southern District of
West Virginia, sitting by designation.

Reversed and remanded by unpublished opinion.  Judge Gregory
wrote the opinion, in which Judge King and Judge Goodwin joined.

Pleasant S. Brodnax, III, LAW OFFICE OF PLEASANT S. BRODNAX,
Washington, D.C., for Appellant.  Neil H. MacBride, United
States Attorney, Alexandria, Virginia, Richard D. Cooke,
Assistant United States Attorney, OFFICE OF THE UNITED STATES
ATTORNEY, Richmond, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

GREGORY, Circuit Judge:

Defendant James Eugene Venable ("Venable") appeals his conviction, claiming that the district court violated his Sixth Amendment right to counsel in not obtaining a voluntary and knowing waiver and forcing him to proceed pro se. We agree and reverse his conviction.


I.

On April 21, 2008, Venable was indicted on one count of possession of a firearm/ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). One day later, Venable received appointed counsel from the Federal Public Defender's Office. He then pled not guilty. In a motion dated May 20, 2008, Venable requested new appointed counsel, asserting numerous claims, including that: (1) "months have gone by" without counsel doing as he wanted; (2) counsel refused to call Venable's former attorney about immunity Venable allegedly received at the Commonwealth's Attorney's Office; (3) counsel refused to investigate Venable's claim that he received immunity when his home was searched; (4) counsel and Venable "can't see eye to eye"; and (5) he "[found] it very hard to communicate

2

with counsel" and wanted a new attorney not from the Federal Public Defender's Office. J.A. 23-24.[1]

At the hearing on his motion, Venable stated that he did not "feel comfortable" with counsel and that, although he had "nothing personal against" counsel, they were "not seeing eye-to-eye on things." J.A. 29. After hearing several similar statements, the court denied Venable's motion for new counsel, explaining that while Venable did have a right to appointed counsel, he did not have a right to counsel he "feel[s] comfortable with," and that the court had appointed capable defense counsel. J.A. 30. Without conducting any colloquy with Venable about waiver of his right to counsel and without giving Venable the choice of proceeding with the counsel the court had appointed, the court ordered Venable to proceed pro se:

> Well Mr. Venable, the Constitution guarantees you the right to have counsel appointed. The Court very carefully appoints lawyers that are competent and capable of handling the type case that is brought against you. The Constitution also gives you an absolute right to represent yourself, and my policy has always been, and I stick to it in any number of these cases, that where I have appointed competent counsel to represent a defendant there is nothing in the Constitution that says that you are entitled to a lawyer that agrees with you, that you feel comfortable with, compatible with, that you have personality fits and that sort of thing. So I am now denying your motion to replace the counsel that you have, but I

---

[1] Citations to J.A. __ refer to the Joint Appendix filed by the parties upon appeal.

3

> will keep her in the case on a stand-by basis. And you are now pro se, and you get to represent yourself. And she is not to participate in your case unless you specifically request her.

J.A. 29-30. At the conclusion of the hearing, the court reiterated its ruling on the motion for new counsel and encouraged him to enter into a plea agreement:

> Mr. Venable let me suggest that it would be in your best interest to read what appears to be a plea agreement that has previously been negotiated, but read it over and see if it serves your best interest, because you get so many advantages out of something like this that you can't believe it. And you will have stand-by counsel, and she will talk to you. And I am satisfied that she is more than competent to handle cases of this nature. She has had any number of them before me and my colleagues, so your motion for new counsel is denied. You are basically now pro se, but you will have stand-by counsel. And you can, if you feel that you are getting in over your head and you need her assistance, she will be required to give it to you. Do you understand that?

J.A. 35. Although Venable responded that he understood, the court never warned him of the dangers of self-representation and never indicated that Venable had a choice to continue with his appointed counsel rather than represent himself. In an order issued later that day, the court clarified that Venable could continue to be represented by appointed counsel. J.A. 37.

After the government filed a superseding indictment increasing the number of guns Venable was charged with possessing, Venable appeared pro se before the district court to be arraigned. At the arraignment, Venable again complained

4

about standby counsel, "I had asked counsel to help me get my witnesses and all that, and she stated when we was [sic] here that I am on my own, that she wasn't going to help me." J.A. 48. The court responded that it had ordered standby counsel to carry out Venable's requests for assistance and that Assistant Federal Defender Robert Wagner ("Wagner") agreed his office would assist Venable.

On July 7, 2008, Venable filed one of his many pro se motions, this time asking for new standby counsel. He stated that he "became Pro Se with out requesting for such status, and the ineffective counsel . . . became standby counsel; who still refuses to help Venable." J.A. 51. On a separate motion the same day, entitled "Motion to Object," Venable claimed that he "[a]t no time elected to proceed Pro Se, Nor [sic] did he ever waived [sic] his Federal Constitutional Amendment under the 6 Six [sic] Amendment Right." J.A. 56.

On July 23, 2008, the appointed standby counsel moved to withdraw because "the attorney-client relationship [had] irreparable [sic] dissolved." J.A. 90. She informed the court that responding to Venable's allegations would breach the attorney-client privilege, and that such response would "likely be detrimental to the client." J.A. 89.

Venable appeared pro se the following day on a motions hearing and to be arraigned on a second superseding indictment,

5

which again increased the number of guns charged. The court granted standby counsel's motion to withdraw but added "for the record" that counsel had provided effective assistance. J.A. 95. The court then appointed Wagner as standby counsel and turned to Venable's motion to suppress. After a confused cross-examination of a government witness and an order that cross-examination end, Venable stated that, "I would like to point out that I am not an attorney. And I am fighting hard to try to make sense of all of this." J.A. 124. At the conclusion of the hearing, Wagner raised concern that he "[didn't] believe that [Venable] ever specifically requested that he represent himself" and instead had simply asked for new appointed counsel. J.A. 131. The court held that:

> I ruled earlier that [Venable] had a right to represent himself, or he had a right to work with counsel. He elected not to work with counsel that I had ruled was competent to represent him. And so it follows that I then ruled that he elected to go pro se. And while he didn't specifically say those magic words, this Court ruled that his actions speak louder than words.

J.A. 131-32. Venable himself responded that he was "asking for an attorney." J.A. 132. The court told Venable that he was really insisting on a right to pick-and-choose appointed counsel, to which Venable stated, "That ain't what I did." J.A. 133. However, the court continued:

> That is the sense of it. But you have no such right. You are entitled to a competent lawyer that the Court

6

designates to represent you. Once that designation is made, smart defendants will cooperate with their competent lawyer and let that lawyer represent them and take charge of the case. You elected not to do that, so I have ruled because you refused to abide by the rules of the Court and accept a competent attorney[,] then the only other option is to proceed pro se. And that is the option that you now have. And I won't ever readdress the issue of you getting another lawyer. Do you understand that?

J.A. 133. Venable replied, "No, sir." The court, after ordering the court in recess, stated that Venable "still [had] the option to cooperate with Mr. Wagner." J.A. 133.

After seven additional pro se motions, the court issued an order in which "the Court FINDS that at a status hearing held on June 4, 2008, the defendant waived his Sixth Amendment right to counsel and irrevocably chose to represent himself pro se." J.A. 135. On August 11, 2008, Venable proceeded to represent himself at trial. After proceedings in which Venable constantly expressed his confusion, the jury found him guilty.

Wagner subsequently filed a motion requesting that Venable undergo a mental health evaluation for the purpose of determining mitigation evidence at sentencing. On January 21, 2009, the court ordered a mental health evaluation of Venable. During the sentencing hearing, the government informed the court that the evaluation found that Venable "has a low level of intellectual functioning. And it says his problem-solving, reasoning, and judgment are likely to be impaired as a result."

7

J.A. 289. The report concluded that "given [Venable's] limited cognitive functioning[,] self-representation may not be a realistic goal." J.A. 346. Based on its assessment that Venable suffered from severe mental deficiencies, the court granted Venable a downward variance from the guideline range of seventy-seven to ninety-six months to a sentence of sixty months in prison.

Venable timely appealed his conviction, claiming that the court violated his Sixth Amendment right to counsel in failing to obtain a valid waiver and forcing him to proceed pro se.

II.

"Determination of a waiver of the right to counsel is a question of law, and thus we review it de novo." United States v. Singleton, 107 F.3d 1091, 1097 n.3 (4th Cir. 1997) (citation omitted).

III.

a.

"Although a defendant may waive his right to counsel, the courts entertain every reasonable presumption against the waiver of this fundamental constitutional right." United States v. Johnson, 659 F.2d 415, 416 (4th Cir. 1981). "In order for a waiver to be valid, it must be shown that the defendant

intentionally relinquished a known right." Id. Thus, "[w]aiver of the right to counsel, as of constitutional rights in the criminal process generally, must be a 'knowing, intelligent ac[t] done with sufficient awareness of the relevant circumstances.'" Iowa v. Tovar, 541 U.S. 77, 81 (2004) (quoting Brady v. United States, 397 U.S. 742, 748 (1970)).

It is the government's burden to prove that Venable waived his right to counsel. See Brewer v. Williams, 430 U.S. 387, 404 (1977). Here, the government concedes that because the district court "did initially err in ordering the defendant to represent himself without giving him the choice of retaining his existing counsel, and never provided any meaningful explanation to defendant about the dangers of self-representation, . . . defendant's conviction must be vacated." Respt.'s Br. 32. Because the government agrees that Venable did not intentionally and knowingly waive his right to counsel, it follows that it did not meet its burden of proving the validity of such waiver. Therefore, although typically the government's confession of error "does not relieve this Court of the performance of the judicial function," Young v. United States, 315 U.S. 257, 258 (1942), the admission of error in this case requires that we reverse Venable's conviction.

Even putting aside the government's concession, Venable plainly did not waive his right to counsel. Nothing in the

9

record can be construed as a voluntary waiver. The basis for the court's forcing Venable to proceed pro se was a handwritten motion in which Venable expressed discomfort with his appointed counsel. Nothing in this note or Venable's argument to the court demonstrates a clear and unequivocal waiver of the right to counsel. Venable not once expressed a desire to represent himself. Rather, Venable repeatedly asserted that he never requested to proceed pro se and did not understand why he had no representation.

Even if he had expressed a desire to represent himself, such waiver would not have been knowingly and intelligently made because the court failed to inform Venable of his options or conduct any inquiry into whether Venable waived the right to counsel. While neither the Supreme Court nor the Fourth Circuit has mandated the exact type of inquiry a court must conduct to determine if a defendant has waived the right to counsel, see Tovar, 541 U.S. at 88, some inquiry must occur "so that [the district judge] may know, and the record may demonstrate, beyond cavil, that an accused knows that he has a right to employ and consult with an attorney . . . and that he voluntarily and intelligently relinquishes that right." Townes v. United States, 371 F.2d 930, 934 (4th Cir. 1966). This inquiry should include "[w]arnings of the pitfalls of proceeding to trial

10

without counsel." Tovar, 541 U.S. at 89 (internal quotation marks and citations omitted).

Here, no warnings were given at all. Based on Venable's motion claiming differences with appointed counsel, the court, without further inquiry, found Venable must proceed pro se. J.A. 30. Although the court sought to clarify after the fact, it initially gave Venable no option other than self-representation. Venable was not, as is required, aware of the "'relevant circumstances.'" Tovar, 541 U.S. at 81 (quoting Brady, 397 U.S. at 748). In addition, despite Venable's numerous statements that he did not want to represent himself, the court did not inquire into whether Venable waived his right to counsel or whether Venable's waiver was voluntary, knowing, and intelligent.[2] Thus, the court violated Venable's Sixth Amendment right to counsel in forcing him to proceed pro se in the absence of a valid waiver.

---

[2] The district court, in refusing to hear Venable's express desire to not waive his right to counsel, found Venable's "actions [spoke] louder than words." J.A. 131-32. While some law outside this Circuit supports the general proposition that a defendant can waive the right to counsel without affirmatively invoking his right to self-representation, the same case law provides that waiver is only valid if knowingly and intelligently made. See United States v. Garey, 540 F.3d 1253, 1265-66 (11th Cir. 2008) ("[W]hen an indigent defendant rejects competent, conflict-free counsel, he may waive his right to counsel by his uncooperative conduct, so long as his decision is made with knowledge of his options and the consequences of his choice.").

11

b.

Although both parties agree that this case should be remanded, they differ on the appropriate relief. The government argues that the mental health evaluation was not conducted according to any statutory authority, and that on remand, Venable's competency to stand trial should be evaluated under 18 U.S.C. § 4241. We need not decide whether the court took proper notice of the evaluation at issue because we do not consider the propriety of Venable's sentence. Likewise, although the district court is, of course, free to conduct a competency hearing on remand, such issue is beyond this appeal. On the other hand, Venable argues that we should dismiss his case with prejudice, but such remedy is not appropriate for the Sixth Amendment violation before us.

IV.

Based on the foregoing analysis, we reverse Venable's conviction and remand the case for a new trial.

REVERSED AND REMANDED

12