[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-14012
Non-Argument Calendar

_____

D.C. Docket No. 7:18-cr-00524-LSC-SGC-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DEREK LEVERT HALL,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(April 8, 2021)

Before ROSENBAUM, NEWSOM and ANDERSON, Circuit Judges.

PER CURIAM:

Derek Levert Hall appeals the district court's judgment against him, which includes his convictions for possession of crack cocaine, cocaine, and 3,4-Methylenedioxy Methamphetamine ("MDMA") with intent to distribute, carrying a firearm in relation to a drug trafficking crime, and being a felon in possession of a firearm.[1]  On appeal, he argues that he did not voluntarily and knowingly waive his right to counsel because he did not affirmatively state that he wanted to represent himself and thought that he would be able to be represented by a non-attorney advisor of his choice.  After careful review, we affirm.

## I

## A

A grand jury indicted Hall with one count of possession of marijuana, crack cocaine, cocaine, and MDMA with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count One), one count of carrying a firearm in relation to and in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count Two), and one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (Count Three).  The court appointed Hall counsel, Stuart Albea, who represented him at arraignment.  During his

---

[1] Hall refers to himself as Derek Levert Hall-Bey because he claims to be a sovereign citizen of a different government.  We'll refer to Hall by his legal name, Derek Levert Hall.

arraignment hearing, Hall asserted that he was a Moorish American National Sovereign Citizen and pleaded not guilty.

A few weeks before his trial, Albea requested a status conference because he was having difficulty communicating with Hall due to Hall's insistence that he was a Moorish sovereign citizen and that he wanted a representative, Maurice Parham-Bey, from his own "government" to represent him. Specifically, Hall asserted that he was a "Moorish American National" and that he had asked Albea to "release himself off of this case because I talked to my government and they are going to represent me." The court asked if Parham-Bey was a lawyer or advisor, and Hall replied that he is "an advisor of the Moorish American National."

The court had a long exchange with Hall, in which the court told him the following: (1) that he has an absolute right to represent himself; (2) that someone who is not a lawyer cannot represent him; and (3) that if his advisor shows up to trial and isn't licensed to practice law, then "they are not going to be allowed to represent you and you are going to be stuck by yourself in a case." Hall replied:

> It's the whole purpose of saying the right things to represent me. I mean, that's why I have him. I gave him full power of attorney of—all of me. I mean, this is my life that's going to be on stand. So with that being said, he going to represent me to the fullest of our knowledge of being a Moorish American National, part of the United States of America Republic.

Hall then argued that the court didn't have jurisdiction over him because he was a citizen of a different sovereign and that, under those laws, he could only be

3

charged with "treason, rape, and murder." The court attempted to explain to Hall that he lives in the United States and asked him if he understood the charges brought against him. Hall then asserted that he wasn't Derek Levert Hall but Derek Levert Hall-Bey, that he didn't think Albea had his best interests at heart, and that he wanted a representative from his government to represent him at trial. After the court had the prosecutor read the charges against him, Hall refused to state that he understood what the charges were, instead replying to each charge that "I heard it" or something similar. The court concluded by telling Hall that the trial would be January 7, and Hall stated that he "would like Mr. Albea to leave today and not say anything else to me from this day forward." The court replied that Albea would be available to him but wouldn't sit next to him at trial.

At the end of the hearing, Albea asked the court to clarify his role, and the court replied that he would be "back-seat counsel." The government then asked if there needed to be a *Faretta* colloquy "based on this defendant's position about proceeding *pro se*." The court replied: "Well, he is refusing to accept counsel. So I don't know how I can go through it and determine whether or not he has competency to—he is obviously a smart individual."

**B**

At the jury selection, Parham-Bey appeared to defend Hall. After determining that he was not a licensed attorney, the court told him to have a seat in

the audience. The court then addressed Hall, discussing the difficulties of jury trials and advising him to use Albea for help. Hall stated that he did not understand why Albea was there, that he still wanted Parham-Bey to represent him, and that the court had told him in the previous hearing that it would allow Parham-Bey to represent him. The court reiterated that it had told him that it would only allow a licensed attorney to represent him. The following exchange then took place:

> THE COURT: Do you understand me?
> HALL: No.
> THE COURT: Okay. What do you not understand?
> HALL: Nothing that you are saying.
> THE COURT: All right. Mr. Hall, I know you understand what I am saying. And I also understand that you don't want to cooperate.
> HALL: I am telling you. You can't tell me about me.
> THE COURT: I'm sorry?
> HALL: You are telling me what I understand after I tell you that I don't.
> THE COURT: Okay. Do you have any questions about what I said?
> HALL: I don't understand any of it.
> THE COURT: What do you not understand?
> HALL: Nothing.
> THE COURT: Do you understand that we are bringing in a jury?
> HALL: I don't understand why without—my representation is here with me.
> THE COURT: All right. I have already explained that to you. Anything else? Now, for the record, you are a moorish national, is that what you said? Is that right?
> HALL: (No response.)
> THE COURT: Mr. Bey?
> HALL: (No response.)

After a trial, the jury returned a verdict of guilty on all three counts.

At an initial sentencing hearing, Hall stated that he would be willing to accept alternative representation. The court appointed Glennon Threatt, Jr., from the Office of the Federal Public Defender for the Northern District of Alabama, as counsel for Hall. Through Threatt, Hall filed objections to the PSI, mainly based on his argument that he was not subject to the jurisdiction of the district court, which the court rejected. At a subsequent sentencing hearing, the court sentenced Hall to a total of 40 years in prison.[2]

## II

On appeal, Hall argues that he never voluntarily and knowingly waived the right to counsel or elected to represent himself. He contends that he never said he wanted to represent himself and that the court didn't ask him if he wanted to proceed pro se. The government responds that Hall's waiver was entered into voluntarily, knowingly, and intelligently.[3] We agree.

While an indigent defendant has the right to appointed counsel, he does not have the right to demand that a different lawyer be appointed except for good

---

[2] Whether a defendant's waiver of counsel was knowing and voluntary is a mixed question of law and fact that we review de novo. *United States v. Garey*, 540 F.3d 1253, 1268 (11th Cir. 2008) (en banc). The government bears the burden of proving that the waiver was valid. *Id*.

[3] The government also argues that the validity of Hall's waiver of counsel warrants plain-error review because his new counsel at his sentencing hearing never made an objection to Hall's original wavier of counsel. This Court has never expressly decided whether failure to challenge the validity of waiver of counsel is subject to plain-error review, but most cases apply de novo review. *United States v. Stanley*, 739 F.3d 633, 644 (11th Cir. 2014). We need not address this question because Hall's argument fails under de novo review.

cause. *See United States v. Garey*, 540 F.3d 1254, 1263 (11th Cir. 2008) (en banc). When a defendant, expressly or implicitly, rejects both appointed counsel and self-representation, the district court may determine that he has waived his right to appointed counsel. *Id.* at 1263–65.

In *Faretta v. California*, 422 U.S. 806, 834 (1975), the Supreme Court recognized that a defendant may exercise a right to self-representation by making a knowing and voluntary waiver of the right to counsel. The "ideal method of assuring that a defendant understands the consequences of a waiver is for the trial court to conduct a pretrial hearing at which the district court should inform the defendant of the nature of the charges against him, possible punishments, basic trial procedure and the hazards of representing himself." *Garey*, 540 F.3d at 1266 (quotation marks omitted). Failure to hold a *Faretta* hearing is not an error as a matter of law if the record demonstrates that the defendant knowingly and voluntarily elected to represent himself. *United States v. Stanley*, 739 F.3d 633, 645 (11th Cir. 2014).

We consider eight factors, known as the "*Fitzpatrick* factors," to determine whether the waiver of counsel was knowing and voluntary. *United States v. Kimball*, 291 F.3d 726, 730 (11th Cir. 2002). Those factors are:

> 1) the defendant's age, health, and education; 2) the defendant's contact with lawyers prior to trial; 3) the defendant's knowledge of the nature of the charges and possible defenses and penalties; 4) the defendant's understanding of the rules of evidence, procedure and

7

courtroom decorum; 5) the defendant's experience in criminal trials; 6) whether standby counsel was appointed and, if so, the extent to which standby counsel aided in the trial; 7) any mistreatment or coercion of the defendant; and 8) whether the defendant was attempting to manipulate the trial.

*Id*. at 730–31.

In *Garey*, we addressed the waiver-of-counsel question in the context of an uncooperative defendant who prevented the court from "eliciting clear information regarding the defendant's understanding of the dangers of proceeding pro se." 540 F.3d at 1267. There, we held that:

> [W]hen confronted with a defendant who has voluntarily waived counsel by his conduct and who refuses to provide clear answers to questions regarding his Sixth Amendment rights, it is enough for the court to inform the defendant unambiguously of the penalties he faces if convicted and to provide him with a general sense of the challenges he is likely to confront as a pro se litigant. So long as the trial court is assured the defendant (1) understands the choices before him, (2) knows the potential dangers of proceeding pro se, and (3) has rejected the lawyer to whom he is constitutionally entitled, the court may, in the exercise of its discretion, discharge counsel or (preferably, as occurred here) provide for counsel to remain in a standby capacity. In such cases, a *Faretta*-like monologue will suffice.

*Id*. at 1267–68 (footnote omitted).

Here, while the district court's inquiry during the pre-trial hearing wasn't a formal *Faretta* hearing and fell short of covering all the *Fitzpatrick* factors, the record shows that Hall knowingly and willingly waived his right to counsel. True, it would have been better had the district court advised Hall more on trial procedures and the hazards of proceeding without an attorney. Nevertheless, on

8

this record, we think the court did enough.  Hall clearly rejected his appointed counsel, and the district court made it clear that his only remaining options were representing himself and finding another licensed attorney.  The district court also attempted to explain to Hall the dangers of proceeding with his jurisdictional defense—*i.e.*, that the United States had no jurisdiction over him—and to advise him that he would likely be convicted at trial if he didn't put on a different defense.  The court further had the prosecutor read Hall the charges against him and explained the charges to Hall and that the charges carried a possible life sentence.  Hall remained uncooperative throughout the pretrial hearing, asserting that he wasn't subject to the jurisdiction of the United States because he was a sovereign citizen, claiming that he wasn't Derek Levert Hall but Derek Levert Hall-Bey, and refusing to acknowledge that he understood the charges against him or anything that the court was telling him.  The district court did all that it could to inform an uncooperative defendant of the dangers of proceeding without licensed counsel and assured itself that Hall understood the choices before him, knew the potential dangers of proceeding pro se, and rejected his appointed attorney.  *See Garey*, 540 F.3d at 1267.

Moreover, other *Fitzgerald* factors ultimately support the conclusion that Hall's waiver of counsel was knowing and voluntary.  Hall received his GED while in prison, and his PSI indicates that he held regular employment as a cook

prior to his arrest.  Hall asked questions during the pretrial hearing about the police needing a search warrant and the penalties attached to his charges, which showed that he followed the conversation.  The court also ensured that Hall was able to subpoena witnesses and made Albea standby counsel so that Hall would have an attorney as a resource both leading up to and during trial.  Additionally, there is no evidence of coercion, but Hall's continued uncooperativeness is evidence that he was trying to manipulate the proceedings by insisting that the court allow Parham-Bey to represent him.

Because the record establishes that Hall knowingly and voluntarily waived his right to counsel and elected to represent himself, we affirm the district court's judgment.

**AFFIRMED.**