[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
February 7, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-11553
Non-Argument Calendar

_____

D. C. Docket No. 04-00074-CR-3-RV

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

JACQUELINE ANNE SHARPE,
a.k.a. Anne Sharpe,
JAMES A. SHARPE, SR.,
a.k.a. Jimmy Sharpe,
DAVID W. STUART,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(February 7, 2006)

Before DUBINA, HULL and MARCUS, Circuit Judges.

MARCUS, Circuit Judge:

The government appeals the district court's post-trial dismissal of the indictment, pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B) for failure to state an offense, against James Sharpe, Sr. ("Sharpe") and Jacqueline Anne Sharpe ("Anne Sharpe") (collectively, "the Sharpes") and David Stuart. The two-count indictment charged Sharpe and Stuart with mail fraud, in violation of 18 U.S.C. §§ 1341 and 2 (Count 1), and all three defendants with conspiracy to launder proceeds of mail fraud, in violation of 18 U.S.C. § 1956(h) (Count 2), arising out of their involvement in a scheme to conceal funds which Sharpe was ordered to relinquish to a court-appointed Receiver as part of a plea agreement in a prior case. On appeal, the government argues the district court erred by dismissing the indictment because it contained allegations sufficient, as a matter of law, to state the offenses charged. We agree and, accordingly, reverse the district court's dismissal of the indictment and remand with instructions to reinstate the jury's verdict and for further proceedings consistent with this opinion.

I.

We review the dismissal of an indictment de novo. United States v. deVegter, 198 F.3d 1324, 1326 (11th Cir. 1999). Federal Rule of Criminal Procedure 12(b)(3)(B) provides that "at any time while the case is pending, the court may hear a claim that the indictment or information fails to invoke the court's

2

jurisdiction or to state an offense." Fed. R. Crim. P. 12(b)(3)(B). We will reverse a Rule 12(b)(3)(B) dismissal if we conclude, as we do here, "that the factual allegations in the indictment, when viewed in the light most favorable to the government, were sufficient to charge the offense as a matter of law." deVegter, 198 F.3d at 1327 (internal quotations omitted); see also United States v. Sampson, 371 U.S. 75, 78-79 (1962) (stating that allegations in indictment are treated as true when reviewing Rule 12(b) motions to dismiss).

## II.

The relevant facts are these. We emphasize that our focus is on the facts as alleged in the indictment, which we view in favor of the government and assume to be true for purposes of this appeal. In other words, as the district court was required to do, we limit our discussion to the facial sufficiency of the allegations of the indictment for purposes of the Rule 12(b)(3)(B) analysis.

According to the instant indictment, Sharpe had previously pled guilty, in a separate proceeding, to three counts of making false statements, in violation of 18 U.S.C. § 1014. The superseding indictment in the prior case included a forfeiture count enumerating, inter alia, commercial property located on Highway 98 in Destin, Florida ("Emerald Lakes property"), as having been obtained by fraud and, therefore, forfeitable. The Emerald Lakes property was owned by Four Star, a

3

company which was owned by Asset Resources Management ("Asset Resources"). Asset Resources, in turn, was owned by the Sharpes, and Sharpe served as the President and Director of the company.

As part of the plea agreement in the prior case, Sharpe and his co-defendants, James A. Sharpe, Jr. and Shannon Sharpe Carr, agreed to the court's appointment of a Receiver to locate and manage assets, including the Emerald Lakes property. The Receiver was charged with liquidating the Emerald Lakes property and holding all funds from the sale for future distribution to the victims of the crimes to which Sharpe pled guilty. According to the allegations enumerated in Count 1 of the instant indictment, Stuart, a licensed real estate agent working with Abbott Realty Services, Inc. ("Abbott Realty"), and Sharpe,

> knowingly devise[d] and intended to devise a scheme and artifice to defraud, and for obtaining money by means of false and fraudulent pretenses, representations, and promises for the purpose of executing such scheme and artifice and attempting so to do, caused to be sent from Fort Walton Beach, Florida, and delivered according to direction thereon by commercial interstate carrier, a FedEx package containing [a check] to Mr. Michael J. Quilling, [the Receiver] . . .

Notably, the FedEx package was sent on or about June 11, 2004, after the appointment of the Receiver.

The indictment further alleged that on March 8, 2004, Sharpe and Stuart entered into an "Exclusive One Time Listing Agreement," in which Sharpe, as president of Four Star, agreed to pay Abbott Realty a flat commission fee of

4

$30,000 upon the sale of the Emerald Lakes property for $1,750,000. The property was sold for $1,750,000 on June 5, 2004, and, pursuant to instructions from Stuart, the closing attorney disbursed the $30,000 commission fee to Abbott Realty. In addition, the closing attorney disbursed $153,750 to "David Stuart, Consultant," also pursuant to Stuart's instructions. The amount of both disbursements was deducted from the money the closing attorney gave to the Receiver, even though, as the indictment noted, the receivership orders required "the sale proceeds to be given directly to the Receiver."

On June 11, 2004, Stuart deposited the $153,750 consultant fee into his checking account, which, prior to this deposit, had a balance of approximately $2,000. Three days earlier, on June 8, 2004, Stuart had written a check, drawn on this same checking account, to Anne Sharpe (Sharpe's wife) for $35,000. Finally, on June 14, 2004, Anne Sharpe presented Stuart's check to Stuart's bank and converted the check into four official checks in the amount of $8000 each and took the remaining $3000 in cash.

Thus, according to Count 1, the Sharpes and Stuart engaged in a scheme and artifice to defraud the Receiver of a portion of the Emerald Lakes sales proceeds, which the Sharpes were required to give directly to the Receiver, pursuant to Sharpe's plea agreement in the prior case. In other words, construing the allegations in the light most favorable to the government, the scheme consisted of

5

unlawfully diverting some of the Emerald Lakes sale proceeds to the Sharpes, falsely representing to the Receiver the amount of the sale, and using the mails to further the scheme to defraud.

In Count 2, Stuart and both Sharpes were charged with conspiracy to launder the proceeds of the mail fraud, in violation of 18 U.S.C. § 1956(h), based on the facts presented in Count 1 and the allegations that Stuart, Sharpe, and Anne Sharpe

> knowingly combine[d], conspire[d], . . . together and with other persons, to conduct and attempt to conduct monetary transactions affecting interstate commerce, knowing that the property involved in the transactions represented the proceeds of unlawful activity, that is, mail fraud, and knowing that the transactions were designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity . . .

The government's allegations were based in part on the two orders from the prior criminal case involving Sharpe, in which the Receiver was appointed.

During the defendants' jury trial, the government entered the two receivership orders into evidence and argued that the Receiver was entitled to receive the $35,000 portion of Stuart's consultant fee that ultimately was given to the Sharpes.[1] The defendants maintained during the trial, however, that the

---

[1] The district court's order appointing the Receiver, dated November 21, 2003, included the following provisions:

1.  [P]ending resolution of this case, the defendants, their agents, servants, employees, attorneys, family members, and those persons in active concert or participation with them, are ORDERED not to sell, assign, pledge,

$35,000 given by Stuart to Anne Sharpe was a personal loan as evidenced by a

distribute, give away, encumber, remove from the jurisdiction of this court with the intent to conceal or hide, or otherwise participate in the disposal of, or attempt to take any actions that would affect or diminish the value or marketability of, the following property:

. . . .

d.    defendants' interest in real property location on Highway 98. . . .

. . . .

2.    In accordance with the agreement reached by the parties, the defendants are authorized to sell or dispose of the property listed in paragraph d above, after consultation with and approval of the United States Attorney.

IT IS FURTHER ORDERED that Michael J. Quilling, Esq. ("Receiver") . . . be and hereby is appointed as receiver to identify and trace financial assets of defendants James A. Sharpe, Sr. . . . The Receiver is further authorized to take possession of and manage the seized assets listed in paragraphs e through j above and any proceeds obtained by and of the defendants as a result of the sale of the property listed in paragraph d above, pending further order of this court.

In a second receivership order, entered on March 11, 2004, after the parties agreed to the expansion of the Receiver's duties and responsibilities, the prohibition of the defendants' conduct in relation to the forfeiture property was expanded to cover "any property subject to forfeiture belonging to, or controlled by the defendants, in whole or in part, including but not limited to the following property: . . . d.  defendants' interest in real property located on Highway 98 . . . ." The second receivership order further provided:

That James A. Sharpe, Sr., James A. Sharpe, Jr., and Shannon Sharpe Carr, their agents, servants, employees, attorneys, family members, and those persons in active concert or participation with them, shall immediately identify and turn over possession to the Receiver, all the property described above which is in their possession or under their control.

IT IS FURTHER ORDERED that no person or entity claiming the right to possess or operate or make decisions with respect to any Receivership Assets shall exercise any of their claimed rights or powers with respect to the receivership Assets until further order of the Court.

7

promissory note. On October 22, 2004, the jury returned a verdict finding the defendants guilty as charged.

Seven days later, Anne Sharpe filed a motion for judgment of acquittal, pursuant to Federal Rule of Criminal Procedure 29(c), challenging the sufficiency of the evidence to support her conviction on Count 2.[2] In this motion, Anne Sharpe asserted that the government failed to prove beyond a reasonable doubt that Sharpe and Stuart committed mail fraud, and, as a result, the government failed to establish that the $35,000 check Anne Sharpe received from Stuart consisted of proceeds from mail fraud or that she entered into an agreement with Sharpe and Stuart to conceal money she knew was obtained through mail fraud. This motion

---

[2]Rule 29(c), which controls motions for judgment of acquittal filed after the jury verdict, provides the following:

> (c) After Jury Verdict or Discharge.
>
> (1) Time for a Motion. A defendant may move for a judgment of acquittal, or renew such a motion, within 7 days after a guilty verdict or after the court discharges the jury, whichever is later.
>
> (2) Ruling on the Motion. If the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal. If the jury has failed to return a verdict, the court may enter a judgment of acquittal.
>
> (3) No Prior Motion Required. A defendant is not required to move for a judgment of acquittal before the court submits the case to the jury as a prerequisite for making such a motion after jury discharge.

Fed. R. Crim. P. 29(c).

remained pending when the defendants proceeded to sentencing on January 5, 2005.

During the subsequent sentencing hearing, in support of his objections to the computation of his recommended sentence in the Presentence Investigation Report, Stuart argued that the amount of loss in the case was $0 and that the Receiver was not entitled to the $35,000 portion of Stuart's fee because it represented a 2% commission that would have gone to J.A.S. Realty, another company formed by Sharpe but one that was not covered by the receivership orders entered in the prior case. The district court agreed that if the receivership orders did not cover J.A.S. Realty, then the Receiver was not entitled to the money.

At the sentencing hearing, Stuart and the Sharpes also orally moved the court for judgments of acquittal based on the fact that the receivership orders did not cover J.A.S. Realty. The defendants urged, in essence, that if the $35,000 payment to Anne Sharpe, in fact, was a commission to J.A.S. Realty, there could be no fraud against the Receiver because he was not entitled to money owing J.A.S. Realty. The district court provided the parties with one week to file memoranda of law in support of their positions on the Rule 29(c) motions.

The government filed a written memorandum in opposition to the oral motions. The government highlighted that the Rule 29(c) motions were untimely since they were not made until January 5, 2005, which was more than <u>seven</u> days

9

after the jury returned its verdict on October 22, 2004. As for the still-pending written motion, pursuant to Rule 29(c), filed by Anne Sharpe within the seven-day period, the government noted that it was not based on the arguments concerning J.A.S. Realty, which were made at the sentencing hearing. Other than Anne Sharpe's post-verdict motion for judgment of acquittal, which was filed before the arguments made at the sentencing hearing and was not based on those arguments, the defendants did not file any written materials in support of their arguments made at the sentencing hearing, despite being given the opportunity to do so.

The district court subsequently converted the oral motions for judgment of acquittal into motions to dismiss the indictment for failure to state an offense. In its order, the court noted that Anne Sharpe had filed a written motion for judgment of acquittal under Rule 29, and, at the sentencing hearing, all three defendants made oral motions for judgments of acquittal on the grounds that the indictment did not state an offense. The district court determined that the defendants' motions for judgment of acquittal under Rule 29 were untimely and, as a result, the court lacked authority to grant them.

Although the oral motions for judgment of acquittal plainly were untimely, based on the defendants' oral arguments at the sentencing hearing, the district court construed the Rule 29 motions as if they were made pursuant to Rule 12(b). The court then found that the $35,000 check Stuart wrote to Anne Sharpe -- again, the

defendants had argued at trial that the check was a  loan -- was, in fact, a 2%

commission that J.A.S. Realty customarily received in dealings involving Stuart

and Sharpe.  Relying on the two receivership orders, which the government had

presented during the jury trial, the court concluded that J.A.S. Realty was not

within the scope of the orders that covered "the defendants, their agents, servants,

employees, attorneys, family members, and those in active concert or participation

with them."  Thus, the court found that J.A.S. Realty, as a separate legal entity, was

not prohibited from receiving a 2% commission from the sale of the Emerald

Lakes property.  The court also determined that the Receiver was not defrauded

because diversion of the funds by Stuart to Anne Sharpe did not deprive the

Receiver of any money since the orders did not bar J.A.S. Realty from receiving

the 2% commission, and the $35,000 given to Anne Sharpe represented the amount

of the commission.

As a result, the court concluded that the indictment did not sufficiently

allege mail fraud and, therefore, the money at issue in the money laundering count

could not be considered proceeds of unlawful activity.  Accordingly, the court

vacated the final judgments and dismissed the indictment. This appeal followed.

III.

On appeal, the government asserts that the district court erred by dismissing

the indictment, pursuant to Rule 12(b)(3)(B), because it looked beyond the face of

the indictment and made its decision based on all of the evidence presented during the trial. It argues that the indictment sufficiently charged mail fraud by alleging that the defendants wilfully participated in a scheme to defraud another (the Receiver) of property or money (the $35,000 portion of the Emerald Lakes sale proceeds Stuart transferred to the Sharpes) and used the mails in furtherance of that scheme. The government also contends that the district court improperly relied on a construction of the facts that was not supported by the evidence and, based on this erroneous construction of the evidence, found that J.A.S. Realty did not fall within the scope of the receivership orders. Finally, the government highlights that one of the receivership orders required the Receiver to take possession of any proceeds from the sale obtained by any defendant. Thus, according to the government, the $35,000, even if it was a commission to J.A.S. Realty, was still "obtained" by Sharpe through the check written to Anne Sharpe, in violation of the receivership orders.

By now it has become well-established that "[t]he sufficiency of a criminal indictment is determined from its face." United States v. Salman, 378 F.3d 1266, 1268 (11th Cir. 2004) (quoting United States v. Critzer, 951 F.2d 306, 307 (11th Cir. 1992)). "For an indictment to be valid, it must contain the elements of the offense intended to be charged, and sufficiently apprise the defendant of what he must be prepared to meet." United States v. Bobo, 344 F.3d 1076, 1083 (11th Cir.

2003) (internal quotation marks omitted). "An indictment not framed to apprise the defendant with reasonable certainty, of the nature of the accusation against him is defective, although it may follow the language of the statute." Id. (internal quotation marks omitted). "Furthermore, if the indictment tracks the language of the statute, it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." Id. (internal quotation marks omitted).

In ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the face of the indictment and, more specifically, the language used to charge the crimes. See United States v. Critzer, 951 F.2d 306, 307 (11th Cir. 1992). It is well-settled that "a court may not dismiss an indictment . . . on a determination of facts that should have been developed at trial." United States v. Torkington, 812 F.2d 1347, 1354 (11th Cir. 1987).

After review of the record, it is clear that in dismissing the instant indictment the district court considered the overall sufficiency of the evidence presented by the government at trial, according particular weight to the language of the receivership orders, which were presented as evidence at trial and were not part of the indictment. This it could not do. Even if the district court was right that the Receiver was not entitled to the $35,000 payment or that the $35,000 payment was

13

a loan -- and the record may be fairly debatable on these points -- those facts do not facially invalidate the indictment's allegations. Rather, they concern the sufficiency of the evidence, which is not the issue before us (and, as the district court recognized, could not be raised by a motion for judgment of acquittal because the defendants did not timely perfect such a motion).

Mail fraud consists of the following elements: "(1) an intentional participation in a scheme to defraud a person of money or property, and (2) the use of the mails in furtherance of the scheme." See United States v. Smith, 934 F.2d 270, 271 (11th Cir. 1991) (quoting United States v. Downs, 870 F.2d 613, 615 (11th Cir. 1989)). Based on our de novo review, we conclude the district court erred by dismissing the indictment in this case. In both counts, the indictment begins by tracking the actual language of the applicable statutes. Each count then goes on to enumerate the underlying facts and circumstances, which we have detailed at some length above, as to the crime charged so as to inform the defendants of the conduct constituting the offenses with which they were charged.[3]

---

[3] To the extent the defendants suggest more detail was required in the indictment, we disagree. "It is not necessary for an indictment . . . to allege in detail the factual proof that will be relied upon to support the charges. That information, if essential to the defense, can be obtained by a motion for a bill of particulars and failure to grant such a motion may be reversible error." United States v. Crippen, 579 F.2d 340, 342 (5th Cir. 1978). We note that the defendants did not move for a bill of particulars here, nor, for that matter, did they ever ask for the relief they ultimately obtained by virtue of the sua sponte dismissal of the indictment.

The indictment alleged that the defendants participated in a scheme to defraud the Receiver. The indictment alleged that the scheme was based on the diversion of proceeds from the Emerald Lakes property sale through payment of the consultant fee to Stuart, who, in turn, transferred $35,000 of the fee to Anne Sharpe. The defendants falsely and fraudulently represented the sale proceeds of the Emerald Lakes property when they sent the Receiver a check that was, in fact, for a lesser amount. This lesser amount did not include the $35,000 payment to Anne Sharpe. The indictment also alleged that the defendants used the mails (a commercial mail carrier, Federal Express) to send the fraudulent disbursement check to the Receiver.

Simply put, the indictment sufficiently alleged a violation of the mail fraud statute and should not have been dismissed as to Count 1.[4] Viewed in the light most favorable to the government, the allegations in the indictment were sufficient to state the charged offenses as a matter of law as to both counts of the indictment because the counts contained all of the elements of the offenses charged and informed the defendants of the charges they faced. Accordingly, we reverse the

---

[4]We also find the foregoing factual allegations sufficient to assert a conspiracy to launder money, as charged in Count 2. Cf. United States v. Silvestri, 409 F.3d 1311, 1328 (11th Cir.) (conspiracy to launder money occurs when: (1) an agreement exists between two or more people to launder money, and (2) the defendants knowingly and voluntarily joined or participated in the conspiracy), cert. denied, No. 05-7149 (Nov. 28, 2005).

district court's decision to dismiss the indictment and remand with instructions that the district court reinstate the jury's verdict and for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**