# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS

## UNITED STATES

v.

## Samuel B. RAY
### Maritime Enforcement Specialist Third Class (E-4), U.S. Coast Guard

### CGCMG 0403
### Docket No. 1498

### 9 July 2025

General court-martial sentence adjudged on 1 July 2023.

| | |
|---|---|
| Military Judge: | CDR Timothy N. Cronin, USCG |
| Appellate Defense Counsel: | CDR Jennifer S. Saviano, USCG |
| | LT Justin S. Allen, USCG (argued) |
| Appellate Government Counsel: | LCDR Elizabeth M. Ulan, USCG |
| | LT Christopher J. Hamersky, USCG (argued) |
| Special Victims' Counsel: | Mr. Paul T. Markland |

## BEFORE
## McCLELLAND, BRUBAKER & PARKER
Appellate Military Judges

BRUBAKER, Judge:

A general court-martial of members with enlisted representation convicted Appellant, contrary to his pleas, of violating a general order in violation of Article 92, Uniform Code of Military Justice (UCMJ). Appellant was sentenced to reduction to E-2, 60 days of hard labor, and 60 days of restriction. Judgment was entered accordingly.

Appellant raises two assignments of error:

I. The specification of which Appellant was convicted fails to state an offense because it fails to allege specific conduct prohibited by the order; and

II. The military judge abused his discretion by improperly allowing an unsworn statement to be presented by the accuser during sentencing.

We heard oral argument on both issues. We find no prejudicial error and affirm.

## Background

Appellant and Ms. AA, who were both Maritime Enforcement Specialists Third Class (ME3) at the time, were work colleagues. While Appellant was stationed at Coast Guard Station Mayport and then-ME3 AA at nearby Coast Guard Sector Jacksonville, they occasionally worked together on projects or training. They became friends, then "friends with benefits," meaning they had a sexual, though not romantic or exclusive, relationship. R. at 664. On several occasions, they engaged in consensual sexual activity in the "ME bay," a room aboard Station Mayport where MEs stored gear and had lockers. R. at 665.

At trial, Ms. AA testified to the following:

- The "friends with benefits" relationship ended "pretty negatively" when Appellant indicated he wanted to pursue an exclusive relationship, but she declined. R. at 664.

- They continued to work together without issue until one day, Ms. AA was on a computer in the "Sector room" of Station Mayport. She was trying to enter data from a boarding when Appellant approached and offered to assist. After logging onto the computer, Appellant stood up and said, "Thank you for sending the pictures." Ms. AA said, "What pictures?" Appellant responded, "The pictures that you were supposed to send me," alluding to nude photographs he had asked Ms. AA to send of herself. R. at 687.

- Appellant commented he missed her and said, "I know you want me to be in your mouth. I can hear you swallowing." R. at 688.

- Ms. AA, turning her attention back to the computer, said, "No," and started to get up. R. at 689. Appellant put his hand on her neck and said, "Open your mouth." R. at 689–90. Ms. AA, however, was able to get up and move away.

- Appellant then pointed out some indicator lights under the desk that were not supposed to be on. When Ms. AA bent over to investigate, Appellant sat back in his chair and, looking at her backside, let out a slight moan.

- Ms. AA then left the Sector room and went to the nearby ME bay. Appellant, without Ms. AA's invitation, accompanied her. Ms. AA resumed her work at a computer in the ME bay. Once others who had been in the room departed, Appellant resumed his requests for oral sex. While standing to Ms. AA's right, Appellant turned her face toward him, at which point she observed his exposed penis in his hand. Although she

asked him to stop, he placed his penis on her shoulder and ejaculated into her hair and on her shirt, then wiped his hand, with semen on it, down her lips.

Members acquitted Appellant of abusive sexual contact and assault consummated by a battery, but they convicted him of violating a lawful general order by wrongfully engaging in sexually intimate behavior in a Coast Guard-controlled workplace.

### Whether the Specification Fails to State an Offense

The specification of which Appellant was convicted alleges he:

did, at or near Jacksonville, FL, on or about 18 March 2022, violate a lawful general order, which it was his duty to obey, to wit: paragraph 2.A.2.g of COMDTINST M1600.2, Discipline and Conduct, dated 22 Oct 2020, by wrongfully engaging in sexually intimate behavior in a Coast Guard-controlled work place.

Charge Sheet.

Appellant asserts this fails to state an offense because it does not specify the act or acts that allegedly constitute "sexually intimate behavior" as prohibited by COMDTINST M1600.2. The standard of review for this claim depends on whether Appellant objected to the sufficiency of the specification at trial, which the parties dispute. *See* Rule for Courts-Martial (R.C.M.) 905(e); *United States v. Turner*, 79 M.J. 401, 403 (C.A.A.F. 2020).

Appellant did not directly seek dismissal of the specification for failure to state an offense. Instead, he raised the sufficiency of the specification in the course of seeking a bill of particulars. The Government makes two points that we agree with. First, "[p]reserving an argument requires a 'particularized objection.'" *United States v. Harborth*, No. 24-0124, 2025 WL 1607400, at *4 (C.A.A.F. June 3, 2025) (quoting *United States v. Perkins*, 78 M.J. 381, 390 (C.A.A.F. 2019)). Second, seeking a bill of particulars is distinct from challenging the sufficiency of a specification. *See* R.C.M. 906(b)(6), Discussion (noting that a bill of particulars "need not be sworn because it is not part of the specification" and "cannot be used to repair a specification which is otherwise not legally sufficient"); *United States v. Quinn*, 359 F.3d 666, 672, n.2 (4th Cir. 2004) ("Because a bill of particulars cannot cure a deficient indictment, we

conclude that seeking this remedy—without objecting to the sufficiency of the indictment—does not preserve for review an alleged defect in the indictment.") (citation omitted).

Here, however, beyond merely seeking a bill of particulars, Appellant raised what we deem a particularized objection to the sufficiency of the specification. Trial defense counsel did not seek the ordinary *remedy* for an insufficient specification—dismissal under R.C.M. 907(b)(2)(E)—but in seeking a bill of particulars, she specifically attacked the adequacy of the specification. In fact, she advanced the same argument appellate defense counsel now makes: that the specification failed to put the Defense on notice of what conduct allegedly constituted "sexually intimate behavior," and argued the Government's denial of a bill of particulars "*perpetuates* the lack of specificity" in the charging document. App. Ex. 25 at 3 (emphasis added). The Government responded, defending the adequacy of the specification, and the military judge, denying the motion, held the specification was legally sufficient. Under these circumstances, we conclude that, in contrast to *Harborth*, the record has been fully developed on this issue, and it is preserved for appeal. *See Harborth*, 2025 WL 1607400, at *4.

Accordingly, we review the sufficiency of the specification de novo. *United States v. King*, 71 M.J. 50, 51 (C.A.A.F. 2012). As we do so, we read the specification's "wording more narrowly and will only adopt interpretations that hew closely to the plain text." *United States v. Fosler*, 70 M.J. 225, 230 (C.A.A.F. 2011).

But even applying this stricter standard, we find no error. "The military is a notice pleading jurisdiction." *Id.* at 229 (citing *United States v. Sell*, 3 C.M.A. 202, 206, 11 C.M.R. 202, 206 (1953)). To be sufficient, a specification must: (1) allege, either expressly or by necessary implication, every element of the offense intended to be charged and sufficiently apprise the accused of what he must be prepared to meet; and (2) protect him against double jeopardy. *Russell v. United States*, 369 U.S. 749, 763–64 (1962); *Turner*, 79 M.J. at 403; *United States v. Richard*, 84 M.J. 586, 589 (C.G. Ct. Crim. App. 2024).

Provided those two requirements are satisfied, a specification need not "allege in detail the factual proof that will be relied upon to support the charges." *United States v. Sharpe*,

438 F.3d 1257, 1263 n.3 (11th Cir. 2006) (quoting *United States v. Crippen*, 579 F.2d 340, 342 (5th Cir. 1978)). "Rather, more detailed information, 'if essential to the defense, can be obtained by a motion for a bill of particulars' or through pretrial discovery." *United States v. Jenkins*, No. 20-13831, 2022 WL 474704, at *3 (11th Cir. Feb. 16, 2022) (quoting *Sharpe*, 438 F.3d at 1263 n.3); *see also United States v. Nicola*, 78 M.J. 223, 226 n.2 (C.A.A.F. 2019) ("[A] general finding of guilt does not indicate the facts upon which the finding rests.").

The elements of violating a general order are: (1) That there was in effect a certain lawful general order; (2) That the accused had a duty to obey it; and (3) That the accused violated or failed to obey the order. *Manual for Courts-Martial*, United States (2019 ed.) (MCM), pt. IV, para. 18.b at IV-27.[1] The specification expressly alleges each of these elements. It also specifies the order allegedly violated, the date and location of the alleged violation, and how Appellant allegedly violated the order: "by wrongfully engaging in sexually intimate behavior in a Coast Guard-controlled work place." Charge Sheet.

Relying on our recent decision in *Richard*, 84 M.J. 586, Appellant urges that despite reciting the elements, the specification is insufficient because it fails to apprise him of what he must be prepared to meet—specifically, that it fails to allege a specific act or acts constituting "sexually intimate behavior." This case is, however, a far cry from *Richard*. There, we held that charging murder "by asphyxia" failed to apprise Richard of what specific act(s) or omission(s) provided the basis for convicting her of the lesser included offense of involuntary manslaughter. *Id*. at 591. We noted that the phrase " '[b]y asphyxia' describes a medical cause of death, not what act or omission brought about that cause of death." *Id.* at 589. The peculiar circumstances in that case—being charged with causing death through an intentional act but convicted of causing death through an ill-defined culpably negligent act or omission, coupled with the facts and the way the case was litigated—left it wide open as to what act or omission might have negligently caused death by asphyxia. We concluded that this deprived Richard of constitutionally required notice and frustrated our ability to review the sufficiency of the evidence. *Id*. at 591, 593.

---

[1] While the 2019 edition applies due to the date of the offenses, there are no changes in the current version.

Here, in contrast, "engaging in sexually intimate behavior" connotes not just something that happened that Appellant is allegedly criminally responsible for, but action (behavior) on the part of Appellant—him actively *doing* something.[2] "Engaging in sexually intimate behavior," in short, alleges an act. The Government was not required to allege in the specification the evidence it would offer to prove he committed that act. *Sharpe*, 438 F.3d at 1263 n.3. It was entitled to present evidence of all of Appellant's sexually charged comments and actions on 18 March 2022 to demonstrate that he engaged in sexually intimate behavior.

We acknowledge Appellant's point that "sexually intimate behavior" is not further defined in the order and could potentially encompass a broad array of conduct. But in this case, Appellant had sufficient notice to prepare him to meet the Government's evidence of what it alleged was "sexually intimate behavior" in the ordinary meaning of that phrase.[3] We need not explore the outer edges of what might be included within this phrase. The evidence was uncontroverted—even conceded by the Defense—that while in a Coast Guard work place, Appellant sought oral sex before exposing his penis and ejaculating into Ms. AA's hair. Given these circumstances, in sharp contrast to *Richard*, we have no difficulty evaluating the sufficiency of the evidence. *See Richard*, 84 M.J. at 593.

In sum, we conclude that the specification expressly alleged every element of the offense, sufficiently apprised Appellant of what he must be prepared to meet at trial, and, along with the entire record of trial, protected him against double jeopardy. The specification is thus sufficient. *Russell*, 369 U.S. at 763–64.

## Victim Impact Statement

During presentencing, Ms. AA, through counsel, proffered an unsworn statement. Trial defense counsel objected, first, to Ms. AA being considered a "crime victim" of the orders violation and second, in the alternative, to specific portions of the unsworn statement. After

---

[2] *See, e.g.,* Merriam-Webster's Online Dictionary, https://www.merriam-webster.com/dictionary/engage%20in, last visited 25 June 2025 (defining "engaged in" as a phrasal verb meaning "to do (something)").

[3] *See United States v. Pease*, 75 M.J. 180, 184 (C.A.A.F. 2016) ("[W]e interpret words and phrases used in the UCMJ by examining the ordinary meaning of the language, the context in which the language is used, and the broader statutory context.").

ruling that Ms. AA met the definition of a "crime victim" under R.C.M. 1001(c), the military judge sustained some, but not all, of trial defense counsel's objections to specific portions of the unsworn statement. Appellant now asserts the military judge erred, both by allowing Ms. AA to provide an unsworn statement at all and by allowing specific portions of the unsworn statement—including some that trial defense counsel did not object to.

*Standard of Review*

Appellant posits that his overarching objection to the victim impact statement preserves all the objections he now makes to portions of it. We disagree. Preserving an issue requires a "particularized objection," *Harborth*, 2025 WL 1607400, at *4, and we agree with our sister court that an objection that an individual does not meet the definition of a "crime victim" is different from and does not preserve particularized objections to the contents of a statement. *United States v. Da Silva*, No. ACM 39599, 2020 WL 3468282, at *19 (A.F. Ct. Crim. App. June 25, 2020). Accordingly, we review whether Ms. AA met the definition of a "crime victim" under R.C.M. 1001(c) and objected-to portions of the statement for abuse of discretion, while we review unobjected-to portions of the statement for plain error. *United States v. Campos*, 85 M.J. 310, 314 (C.A.A.F. 2025); *United States v. Hardison*, 64 M.J. 279, 281 (C.A.A.F. 2007); *Da Silva*, 2020 WL 3468282, at *19.

"Abuse of discretion occurs when the military judge: (1) bases a ruling on findings of fact that are not supported by the evidence; (2) uses incorrect legal principles; (3) applies correct legal principles in a clearly unreasonable way; or (4) does not consider important facts." *Campos*, 85 M.J. at 314 (quoting *United States v. Ramirez*, 84 M.J. 173, 176 (C.A.A.F. 2024)). "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous." *United States v. Lloyd*, 69 M.J. 95, 99 (C.A.A.F. 2010) (citations and internal quotation marks omitted). Under a plain error standard, Appellant has the burden of persuading this Court that: (1) an error was committed; (2) the error was plain or obvious; and (3) the error resulted in material prejudice to substantial rights. *Hardison*, 64 M.J. at 281.

*Law*

"[A] crime victim of an offense of which the accused has been found guilty has the right to be reasonably heard at the presentencing proceedings relating to that offense." R.C.M. 1001(c)(1). "For purposes of R.C.M. 1001(c), a crime victim is an individual who has suffered direct physical, emotional, or pecuniary harm as a result of the commission of an offense of which the accused was found guilty . . . ." R.C.M. 1001(c)(2)(A). A person meeting this definition "may make an unsworn statement and may not be cross-examined by the trial counsel or the defense counsel, or examined upon it by the court-martial." R.C.M. 1001(c)(5)(A). Such a statement, however, "may only include victim impact and matters in mitigation." R.C.M. 1001(c)(3). "[V]ictim impact includes any financial, social, psychological, or medical impact on the crime victim directly relating to or arising from the offense of which the accused has been found guilty." R.C.M. 1001(c)(2)(B). This definition of "victim impact" "includes two distinct elements: the *offenses of which the accused has been found guilty* and the *impacts* of those offenses on the victim. Both elements must be satisfied." *Campos*, 85 M.J. at 315.

If we conclude the military judge abused his discretion regarding a victim's unsworn statement, we assess for prejudice, only granting relief if we are "persuaded that the improper portion of the victim impact statement 'substantially influenced the adjudged sentence.' " *Id.* at 314 (quoting *United States v. Hamilton*, 78 M.J. 335, 342–43 (C.A.A.F. 2019)). To determine whether improper aspects of a victim's unsworn statement caused prejudice, we consider four factors: "(1) the strength of the Government's case; (2) the strength of the defense case; (3) the materiality of the evidence in question; and (4) the quality of the evidence in question." *Campos,* 85 M.J. at 314 (quoting *Hamilton*, 78 M.J. at 343).

*Analysis*

We reject any categorical approach to determining whether certain offenses can have a victim. By its plain terms, R.C.M. 1001(c) can apply to *any* individual and *any* offense as long as that individual "suffered direct physical, emotional, or pecuniary harm as a result of" that offense. R.C.M. 1001(c)(2)(A). Military judges must determine if an individual meets this definition on a case-by-case basis. *Accord United States v. Cortez*, No. 202300166, 2024 WL 5162766, at *4 (N-M. Ct. Crim. App. Dec. 19, 2024) ("We disagree with Appellant that the

Marine Corps is the sole victim of orders violation offenses. . . . [T]he military judge must make an individualized decision about each person who seeks to exercise her right to be reasonably heard as a crime victim."); *In Re A.J.W.*, 80 M.J. 737, 744–45 (N-M. Ct. Crim. App. 2021); *Da Silva*, 2020 WL 3468282, at *17.

That is what the military judge did here. After assessing the circumstances of this case, he found that Ms. AA suffered direct harm as a result of Appellant engaging in sexually intimate behavior with her in a Coast Guard workplace. This finding is supported by evidence in the record, and it was not an abuse of discretion to determine she was a "crime victim" under R.C.M. 1001(c) and could therefore make an unsworn statement.

The specific contents of the unsworn statement is a trickier matter in a case such as this. Our higher court has cautioned "military judges, particularly where victim impact statements are offered to a panel of members, to be mindful of information that is not attributable to the offenses for which an accused is being sentenced." *Hamilton*, 78 M.J. at 340 n.6. This is especially so when, as here, an accused has been acquitted of serious, non-consensual offenses (such as sexual assault), but convicted for conduct with the same individual of less serious offenses where lack of consent is not an element (such as adultery or orders violations).

In considering the contents of Ms. AA's proffered statement, the military judge was mindful of these concerns. He sustained objections to statements that Ms. AA was still dealing with the embarrassment of having her hair shorn off during a sexual assault forensic examination and the effects of taking prophylactic medications afterward. And, crucially, he provided the members with the following tailored instructions:

- To be clear: You convicted [Appellant] of the sole Specification of Charge III, and acquitted [Appellant] of committing the sole Specification of Charge I and both specifications of Charge II. As a result, your role is to determine a proper sentence for the conviction under Article 92, the sole Specification of Charge III, and that conviction alone. You will not sentence him for the charges of which he has been acquitted.

- Although you must give due consideration to all matters in mitigation and extenuation, as well as to those in aggravation, you must bear in mind that the

accused is to be sentenced only for the offense of which he has been found guilty.

- An unsworn statement is also an authorized means for a crime victim to bring relevant information to the attention of the court. To the extent you determine portions of the unsworn statement related to actions for which you found [Appellant] not guilty, you must not consider those portions in your deliberation on sentence. And to be specific, what the court means is, to the extent you determine that portions of Ms. [AA]'s unsworn statement related to actions for which you found [Appellant] not guilty, you must not consider those portions in your deliberation on sentence.

R. at 1069–70, 1077.

Regarding objected-to portions of the statement, only one causes us concern: "I used to have a strong trust and bond with my sector boarding team in Jacksonville, who were my family—only to have to leave them because of what happened. It was painful to be separated from them, and I felt so alone after being transferred across the country to Seattle." Certified TRANSCRIPT (line 19 of page 1050) at 2–3. Trial defense counsel had objected to this, positing that it addresses an "expedited transfer,"[4] which is the result of an alleged sexual assault, not an alleged orders violation. R. at 1024. We agree and conclude it was an abuse of discretion to allow this statement.

Turning to unobjected-to portions of the statement, we acknowledge that some of them present close calls about whether Ms. AA was addressing impacts resulting from what she still viewed as a sexual assault or those resulting from Appellant simply engaging in sexually intimate behavior contrary to orders. Still, Ms. AA stated that Appellant had been a trusted mentor, and it is not unreasonable to conclude that this incident—even in the absence of a finding of lack of consent—negatively impacted her. And the military judge's well-tailored instructions ensured the members put these statements into their proper context. Appellant has not met his burden of showing that any error was plain or obvious or that he was prejudiced.

---

[4] *See* COMDINST 1754.10F, para 4.F (April 14, 2023).

In sum, the only error was in permitting Ms. AA's statement regarding the impact of her cross-country transfer. We conclude, however, that this did not prejudice Appellant's substantial rights. Article 59(a), UCMJ. Having considered all the circumstances of this case, we are convinced it did not substantially influence the sentence. First, we again note the military judge's excellent instructions, which made it clear to the members that they were only to sentence Appellant for the orders violation and were to disregard anything they heard that they concluded pertained to the offenses of which they had acquitted Appellant. Second, the trial counsel kept his sentencing argument tightly focused and did not mention Ms. AA's transfer. Third, the members had already heard Ms. AA testify to her belief that she had been assaulted during the merits portion of the trial. "An error is more likely to be prejudicial if the fact was not already obvious from the other evidence presented at trial and would have provided new ammunition against an appellant." *United States v. Barker*, 77 M.J. 377, 384 (C.A.A.F. 2018) (citing *United States v. Harrow*, 65 M.J. 190, 200 (C.A.A.F. 2007)). Finally, although Appellant faced a maximum of a dishonorable discharge, forfeiture of all pay and allowances, reduction to E-1, and confinement for two years,[5] the members sentenced him only to reduction to E-2, 60 days of hard labor, and 60 days of restriction. Accordingly, we are satisfied that any error in the victim impact statement did not have a substantial impact on the adjudged sentence.

## Decision

We determine that the findings and sentence are correct in law and fact and, on the basis of the entire record, should be approved. Accordingly, the findings of guilty and the sentence, as approved below, are affirmed.

Chief Judge McCLELLAND and Judge PARKER concur.



For the Court,

Rebecca P. Pskowski
Acting Clerk of the Court

---

[5] *See* MCM, pt. IV, para. 18.d.(1) at IV-28.